IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **PRIYA GUPTA,** | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. **3:20-CV-3560-L** |
| | § | |
| **QWEST GOVERNMENT SERVICES,** | § | |
| **INC.,** | § | |
| | § | |
| Defendant. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court is Defendant's Motion for Summary Judgment (Doc. 26), filed July 15, 2022. For the reasons discussed herein, the court the court determines that Defendant is entitled to summary judgment on Plaintiff's claims for interference under the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"); discrimination on the basis of sex and race under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); discrimination on the basis of race under 42 U.S.C. § 1981; and retaliation under Title VII and the Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code § 21.055. Accordingly, the court **grants in part** and **denies in part** Defendant's Motion for Summary Judgment ("Motion") (Doc. 26) and **dismisses with prejudice** Plaintiff's claims against Defendant for FMLA interference, discrimination on the basis of sex and race under Title VII and Section 1981, and retaliation under Title VII and the TCHRA. Plaintiff's claim for retaliation under FMLA remains before the court.

## I.     Factual and Procedural Background

Priya Gupta ("Plaintiff" or "Ms. Gupta") brought this action against Qwest Government Services, Inc., ("Defendant" or "Qwest") on December 3, 2020, for alleged interference and

retaliation under FMLA, discrimination, and retaliation for protected activity under the TCHRA, Title VII, and Section 1981. *See* Pl.'s Second Am. Compl. (Doc. 22). After seeking the court's leave, she filed her Second Amended Complaint on January 25, 2022, which is the live pleading. Ms. Gupta alleges that Defendant interfered with her FMLA leave and later retaliated against her for exercising her FMLA rights by referencing her leave in performance reviews, making negative comments in person and in writing regarding her leave, and terminating her in response to her HR complaints about FMLA, sex, and race discrimination. *Id*. at 5-6.[1] She also contends that Defendant discriminated against her on the basis of her sex (female) and race/national origin (Indian) by subjecting her to harsher criticism and failing to provide adequate training as compared to her white male colleagues. *Id*. at 6. She alleges that after she complained of the harsher treatment on her belief that it was motivated by discriminatory animus, the treatment worsened and led to her ultimate termination. *Id*. Ms. Gupta seeks compensatory, punitive, and liquidated damages, injunctive relief through reinstatement, attorney's fees, and other costs. *Id*. at 9-10.

On July 15, 2022, Defendant moved for summary judgment on all of Plaintiff's claims on the following grounds:

(1)     Plaintiff's claim of FMLA interference fails because she received all 12 weeks FMLA leave to which she was entitled;

(2)     Plaintiff cannot prove her claim for retaliation under the FMLA because she cannot show a causal link between her FMLA protected activity and her discharge, or that her termination was pretextual;

---

[1] All references to specific pages numbers refer to the ECF-assigned page number.

**Memorandum Opinion and Order – Page 2**

(3)     Plaintiff's claims for race and sex discrimination under Title VII and Section 1981 fail because she cannot establish either a prima facie case of discrimination or that her termination was pretextual;

(4)     Plaintiff's claims for retaliation under Title VII, Section 1981, and TCHRA likewise fail as a matter of law because she cannot show her termination for poor performance was pretextual; and

(5)     Plaintiff's claim for front pay damages fails as a matter of law because she is not seeking reinstatement.

Def.'s Summ. J. Br. 9. Ms. Gupta filed a response on August 4, 2022, contending that genuine disputes of material fact preclude summary judgment on her claims. The court now sets forth the facts upon which it relies to resolve the pending Motion and applies the summary judgment standard as set forth in the following section of this opinion.

Ms. Gupta is a woman of Indian descent. Def.'s Summ. J. App. 26-2, 6. Qwest hired her "in 2018 as a Manager for its Sales Engineer team," and she received an overall positive 2018 Performance Review. Pl.'s Summ. J. App. 96. In January 2019, Qwest conducted a reduction-in-force ("RIF"), and, as a result, Ms. Gupta transitioned into a new position as Senior Lead Sales Engineer, a non-managerial position, under a new supervisor, Ms. Kelly Dial. Def.'s Summ. J. App. 26-1, 3. Ms. Gupta was dissatisfied in her new position and began applying for other positions within Qwest to return to a management role, but, after discussion with Ms. Dial, Ms. Gupta decided to stay on as a Senior Lead Sales Engineer. Def.'s Summ. J. App. 26-2, 11.

Later, Ms. Gupta applied for and was granted FMLA leave to attend to her father's serious health needs in India. Def.'s Summ. J. App. 26-1, 17-18. Ms. Gupta received 12 weeks of

FMLA leave starting June 3, 2019, and after requesting an extension, she received an additional week of leave; she returned to her position on or around September 1, 2019. *Id*. at 3, 17-18.

Before her return, Mr. Mike Renard replaced Ms. Dial as Plaintiff's supervisor. *Id*. at 3. As part of that transition, Ms. Dial and Mr. Renard discussed Ms. Gupta and the impact her FMLA leave had on her ability to learn the new Sales Engineer position. Pl.'s Summ. J. App. 101-03. Ms. Dial stated in an e-mail on July 3, 2019, that Ms. Gupta had "personal distractions at the moment (currently on FMLA)" and noted that she had "minimal background in our products and processes." *Id*. at 102-03. Ms. Dial also conducted a mid-year performance review for Ms. Gupta that assessed her work from June 24, 2019, to August 9, 2019, a time period during which Ms. Gupta was on FMLA leave and performed no work. *Id*. at 84. In the review, Ms. Dial noted that "2019 was an especially challenging year for [Ms. Gupta]," and that after being "out on FMLA all summer," internal changes and the tools of her new position would add additional challenges to her success. *Id*. Ms. Dial added:

> Priya has been out on FMLA all summer, and so much has happened, it will likely be a bit overwhelming upon her return. Organization changes, product rationalization, market segmentation and tools from both sides of the business that were new to her earlier this year and [that] haven't been used in months are going to make for a rough landing upon her return. Relative to the few months that Priya was reporting to me and in role, she met universal competencies, but distractions were impacting her ability to demonstrate urgency and she was not communicating openly or clearly on how much she was struggling, professionally or personally.

Pl.'s Summ. J. App. 84. Ms. Dial further commented:

> 1. Decision time - do you want to be here?
>
> 2. If so, time to engage! Engage your sales team at a strategic level and get involved with your customers on a proactive level.

3. Decide what you what [sic] your strength to be and engage it - if it is strategic planning, then latch on, develop and go!

4. AWS certification of some level before year end.

*Id*.

When Ms. Gupta returned from her FMLA leave, Mr. Renard made numerous negative references to the fact that she took FMLA leave and that her absence had been "hard" on the team. Def.'s Summ. J. App. 26-2, 14.

On November 21, 2019, Ms. Gupta was working at home on a remote internal call when her young child could be heard crying multiple times on the 30-minute call, despite Plaintiff's attempt to place herself on mute. Def.'s Summ. J. App. 26-1, 6. After the disruption, Mr. Renard called her and yelled at her for having a crying baby in the background. Def.'s Summ. J. App. 26-2, 19. Soon after, Mr. Renard required her to work more often in person, when no other Sales Engineers were required to do so. *Id*.

Ms. Gupta made her first HR complaint regarding Mr. Renard in late November or early December of 2019, and she complained that his harsh treatment of her was discriminatory based on her FMLA leave. *Id*. at 29. Referencing the crying-child situation, she complained that "she was called out for situations that were nonissues for other employees who had not taken protected leave." *Id*. at 29. As part of resolving her complaint, HR told her that she was not required to follow Mr. Renard's directive regarding in-person work. *Id*. at 19.

After she filed the HR complaint, she testified that Mr. Renard's treatment of her worsened. *Id*. He was "standoffish" towards her and her work, and he would respond condescendingly to her questions with statements about her FMLA leave. Def. Summ. J. App.

26-2, 14 and 29. When she requested to work remotely from India over the 2019 winter holidays, Mr. Renard denied the request. Pl.'s Summ. J. App. 116.

Mr. Renard gave her a negative 2019 performance review, ranking her as a "2" overall and noting that she either "Meets Expectations" or "Needs Improvement" in her position tasks. *Id*. at 72-76. In the review, he commented that overall "Priya has not met the objectives and requirements for the Sr [sic] Lead Sales Engineer position this year." *Id*. at 75. He further observed multiple times that Ms. Gupta began acquiring the necessary skills for her position "toward the end of the year." *Id*. In her comments to the review, Ms. Gupta complained that Mr. Renard did not provide her training, and when she did reach out for help, he would respond "condescendingly." *Id*. at 80. In his response to those comments, Mr. Renard admitted that he did not join her for any sales calls. *Id*.

After she received her negative performance review, Ms. Gupta complained of Mr. Renard again to HR on March 9, 2020, alleging that he was discriminating against her because of her sex and race as an Indian woman. Def. Summ. J. App. 26-1, 47. Although her initial complaint consisted of a conclusory allegation of "race and gender discriminations," her later communication with an HR representative detailed that Mr. Renard's "annual review and comments are unacceptable, incorrect and harsh," stating that "he never sat on a customer call with me, didn't give me any feedback on performance, no coaching at all." *Id*. at 47-49. She went on to describe her interactions with Mr. Renard as "very condescending" and that he told her not to seek help from coworkers. *Id*. at 50. She also alleged that he made "a couple of comments here and there about how team [sic] are still catching up from when I was in FMLA." *Id*. She also alleged Mr. Renard treated her harshly because she was a working mother, detailing

the crying-child incident, and she asserted that she was "pretty certain that when one of my peer [sic] had a dog barking in the background (and it does happen) they don't get called out like I did." *Id*.

HR interviewed Mr. Renard on April 20, 2020, about the allegations in Ms. Gupta's complaint, and then closed the complaint on May 6, 2020. *Id*. at 8, 55. The next day, Mr. Renard e-mailed her, saying that her performance was not meeting expectations. Pl. Summ. J. App. 121-23. He offered her an opportunity to either separate from the company with an "enhanced severance benefit" or be placed on a Performance Improvement Plan ("PIP"). *Id*. Plaintiff refused the severance package and chose to be placed on the PIP. Def. Summ. J. App. 26-2, 29. Before the PIP could be approved and implemented, however, Mr. Renard selected Plaintiff for a RIF and terminated her in June 2020, along with Steve Meister, a white male Sales Engineer colleague who had not taken leave. Def. Summ. J. App. 26-1, 8.

In his deposition, Mr. Renard admitted that Ms. Gupta's HR complaints "soured" their working relationship and that he discussed them with his supervisor, John Shettleworth. Pl. Summ. J. App. 11-13. He confirmed that he had not made the decision to terminate Plaintiff prior to her second HR complaint and his HR interview. *Id*. at 21. Mr. Renard also admitted that the decision to terminate Ms. Gupta was based upon her two 2019 performance reviews, her 2020 work performance, and her allegedly negative attitude towards her position. *Id*. at 26. He did not conduct a formal analysis before selecting Ms. Gupta for termination in the RIF. *Id*.

## II.    Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v.*

*Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated

assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.   Analysis

### A.   FMLA Interference and Retaliation – Applicable Law

The FMLA provides the right of an eligible employee "to take up to twelve weeks of leave in any one-year period to address a family member's or the employee's own serious health condition." *Bryant v. Texas Dep't of Aging & Disability Servs.*, 781 F.3d 764, 768 (5th Cir. 2015). "Employers subject to the FMLA must comply with two separate 'prohibited acts' provisions found in Section 2615(a) of the FMLA." *Id*. Those provisions make it unlawful for any employer to (1) "interfere with, restrain or deny the exercise of or the attempt to exercise, any right provided in this subchapter," and (2) penalize employees for exercising their FMLA rights through "discharge or in any other manner discriminate against any individual for

opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(1), (2). Courts classify the former as an interference claim and the latter as a retaliation claim. *See Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 349 n.2 (5th Cir. 2013) (Elrod, J., concurring) (collecting cases); *see also Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). The Department of Labor has interpreted the statutory provision in Section 2615(a)(2) to forbid employers from terminating employees for having exercised or attempted to exercise FMLA rights. 29 C.F.R. § 825.220(c).

Plaintiff asserts that Qwest intentionally interfered or restrained her rights under the FMLA, and then willfully retaliated against her use of protected FMLA activity. As Ms. Gupta is bringing claims under both the interference and retaliation provisions of the FMLA, the court examines them separately.

### 1.   FMLA Interference Claim

To establish a prima facie case of FMLA interference, Plaintiff must show that: (1) she was an eligible employee for FMLA leave; (2) Qwest was an employer subject to the FMLA's requirements; (3) she was entitled to leave; (4) she gave proper notice of her intention to take FMLA leave; and (5) Qwest denied her the benefits to which she was entitled under the FMLA. *Lanier v. University of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013) (citing *Mauder v. Metropolitan Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 580 (5th Cir. 2006)).

Plaintiff cannot make a prima facie case for FMLA interference because she has not presented any competent summary judgment evidence showing the elements of that claim and further fails to respond to the Motion's argument of entitlement to summary judgment on the claim. Defendant presents Plaintiff's FMLA approval letter and argues that the undisputed facts

show that Plaintiff "applied for and was granted FMLA leave," which was even extended beyond the 12 weeks required by the statute. The court agrees.

Because the undisputed facts show that Qwest granted Plaintiff more than 12 weeks of FMLA leave, she exhausted all leave to which she is entitled, and, therefore, any claim for interference is without merit. As Plaintiff was granted more than 12 weeks of leave, she fails to raise a genuine dispute of any material fact regarding this claim, and no reasonable jury could conclude that Plaintiff did not receive 12 weeks of leave in 2019. Accordingly, Defendant is entitled to judgment as a matter of law, and the court **grants** Defendant's Motion as to Plaintiff's claim for FMLA interference.

2.      FMLA Retaliation Claim

Turning now to her claim for FMLA retaliation, Ms. Gupta asserts that Defendant retaliated against her for exercising her FMLA right to leave. She contends that Defendant retaliated against her by giving her poor performance reviews based on her absence and then used those reviews as the basis for her termination in June 2020. Given that she has presented no direct evidence, the court determines that this is an indirect evidence case. Generally, the traditional *McDonnell Douglas* burden-shifting framework applies to claims for FMLA retaliation when there is no direct evidence of retaliatory intent. *Amedee v. Shell Chemical, L.P.*, 953 F.3d 831, 835 (5th Cir. 2020); *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the employee must first meet her burden of establishing a prima facie case of retaliation, which requires Ms. Gupta to present evidence that "(1) [s]he was protected under the FMLA; (2) [s]he suffered an adverse employment action; and (3) the adverse action was taken because [s]he sought protection under the FMLA." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013) (citing *Mauder*, 446 F.3d at 583).

**Memorandum Opinion and Order – Page 11**

If the employee succeeds in making a prima facie case, the burden of production (though not persuasion) shifts to the employer to "articulate a legitimate, nondiscriminatory or nonretaliatory reason" for its action. *Ion*, 731 F.3d at 390-91. If the employer does this, the burden swings back to the employee, who must offer sufficient evidence to create a genuine dispute of fact that Defendant's proffered reason is a pretext for discrimination or that the employer's reason is true but is one of the reasons for its conduct, another of which was retaliation. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005). "If the employee proves that discrimination was *a* motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the discriminatory [or retaliatory] animus" or motive. *Id.* (original emphasis). The final burden of the employer in a mixed-motive analysis "is effectively that of proving an affirmative defense." *Id.*[2]

Here, Plaintiff asserts that Defendant improperly argues a but-for standard for showing pretext, and that her claims are correctly analyzed under the less demanding mixed motive standard. Defendant did not file a reply brief or otherwise oppose the use of the mixed-motive standard. After reviewing the briefs and applicable law, the court, therefore, determines that the correct standard to apply is the mixed-motive framework and its accompanying motivating factor standard in deciding Defendant's Motion on Plaintiff's FMLA retaliation claim. *See Richardson*, 434 F.3d at 333 (applying the mixed-motive framework and the motivating factor standard where

---

[2] Otherwise stated, at this step, Defendant must provide sufficient evidence to establish, as a matter of law that, despite any retaliatory animus, it would still have terminated Ms. Gupta. *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 835 (5th Cir. 2020); *Ion v. Chevron, USA, Inc.*, 731 F.3d 379, 392 (5th Cir. 2013). Because Defendant did not file a Reply brief or otherwise present evidence showing that it would have made the same termination decision in spite of any established retaliatory animus, the court does not address this final step for Defendant's summary judgment claim.

**Memorandum Opinion and Order – Page 12**

retaliation was not the only reason for termination). Now that the court has resolved the proper standards, it can analyze its merits.

> a.    *Prima Facie Elements*

To make a prima facie case of retaliation under the FMLA, the employee must show that: (1) she engaged in protected activity under the FMLA; (2) she suffered an adverse employment action; and (3) there is a causal link between her protected activity and the adverse employment action. *Amedee*, 953 F.3d at 835.

It is undisputed that Ms. Gupta engaged in protected activity when she used her entitlement to FMLA leave in the summer of 2019 to travel to India to care for her father. Further, the parties do not dispute that Ms. Gupta suffered an adverse employment action when she was terminated in the June 2020 RIF. Accordingly, the court concludes that Ms. Gupta has satisfied the first two elements of a prima face case.

Defendant argues that it is entitled to summary judgment on Plaintiff's claim for FMLA retaliation because Plaintiff cannot show a causal link between her protected FMLA activity in the summer of 2019 and her discharge over a year later. In Response, Plaintiff contends that Defendant's arguments regarding temporal proximity fail to acknowledge her HR complaint of FMLA discrimination and retaliation in March 2020.

"In evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the temporal proximity between the FMLA leave and the termination." *Mauder*, 446 F.3d at 583 (citation and internal quotation marks omitted). Further, an employee "does not have to show that the protected activity is the only cause of [her] termination." *Id*. (citation omitted). An employee, however, "is required to show that the

protected activity and the adverse employment action are not completely unrelated." *Id*. (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)).

In her Response, Ms. Gupta points to her deposition testimony, that of Ms. Dial and Mr. Renard, and interoffice communications that her supervisors considered her FMLA to have a negative impact on her job performance. Specifically, Plaintiff offered as an exhibit an e-mail in which Ms. Dial made statements that Plaintiff was "distracted by personal issues," which Ms. Dial clarified in her deposition meant Plaintiff's parental health issues. Ms. Dial then made negative references to Plaintiff's FMLA leave in her 2019 mid-year review. Plaintiff's later 2019 review, conducted by Mr. Renard, emphasized her delayed start—which was due to her FMLA leave—and slow growth in her position. The review stated that Plaintiff began acquiring "basic skills" for the position toward the end of the year, and additional comment that "[w]hile she has made some progress towards the end of the year, she has a long way to go to be successful in this role."

On March 9, 2020, Plaintiff complained to HR of FMLA discrimination and retaliation. HR closed her complaint on May 6, 2020, after interviewing Mr. Renard on April 20, 2020. Further, on May 7, 2020, Mr. Renard e-mailed Plaintiff, apparently following up from a previous conversation, that her performance was not meeting expectations and offered her an opportunity to separate from the company with an "enhanced severance benefit" or be placed on a PIP. Plaintiff refused to separate from Qwest and chose to be placed on the PIP. Before the PIP could be approved and implemented, however, Mr. Renard selected Plaintiff for the RIF and terminated her in June 2020, effective in July 2020. In his deposition, Mr. Renard confirmed that

**Memorandum Opinion and Order – Page 14**

he had not made the decision to terminate Plaintiff prior to her second HR complaint and his HR interview.

In sum, Plaintiff has shown that she took protected FMLA leave, that Qwest terminated her, and that roughly six weeks after Plaintiff complained to HR of discrimination, Mr. Renard terminated her, relying upon her performance reviews that negatively referenced her FMLA leave. Accordingly, the court **finds** that Plaintiff has stated a prima facie case for FMLA retaliation.

### b.    *Legitimate, Nonretaliatory Reason*

The burden now shifts to Defendant to offer a legitimate, nonretaliatory reason for Ms. Gupta's termination. In its brief, Defendant argues that Plaintiff was selected as one of two people for the RIF because her two performance evaluations in 2019 document that she was not performing well in her new role and because she stated a lack of interest in her position as a Sales Engineer. The other discharged employee, as Defendant further argues, was a white male who had not used FMLA leave.

While Ms. Gupta disputes making statements of uninterest or unwillingness to learn her position or that her 2019 performance reviews fairly represent her work, "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-[retaliatory] reason." *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991). Accordingly, Defendant has satisfied its burden of showing a legitimate, nonretaliatory reason for Ms. Gupta's termination.

### c.    *Pretext or Motivating Factor*

The burden now shifts to Plaintiff to show that Qwest's reason is either pretext or that retaliation was a factor in her termination. *Richardson*, 434 F.3d at 333. To show that retaliation

was a factor, Plaintiff must offer evidence to show that "the exercise of [her] FMLA rights was a motivating factor in [her] termination. *Ion*, 731 F.3d at 391 (affirming that the mixed-motive framework applies to FMLA cases). Where a plaintiff concedes that retaliatory animus is not the sole reason for her discharge but that retaliation as a motivating factor, the mixed motive framework applies. *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 529 n.4 (5th Cir. 2021).

In doing so, Plaintiff points to Mr. Renard's deposition, in which he admitted that when deciding to terminate Plaintiff, he relied in part on the 2019 mid-year performance review that was conducted while she was away on FMLA leave and her 2019 performance review—both of which make negative reference to her FMLA leave or her "slow start" in her position. Plaintiff also presented evidence that Mr. Renard made in-person comments that her FMLA leave was a liability, repeating the comments that Ms. Dial made in an e-mail to Mr. Renard when Plaintiff was transitioning to his team.

Drawing all reasonable inferences in Plaintiff's favor as the nonmoving party, and considering this evidence, the court concludes that Plaintiff has offered sufficient evidence from which a jury could reasonably conclude that her taking FMLA leave was a motivating factor in Defendant's decision to terminate her. The negative comments from her supervisors, in inter-office communications and in her performance reviews, as well as the temporal proximity of her HR complaint to her termination, are sufficient to raise a genuine dispute of material fact as to whether retaliation was a motivating factor in her termination. As to the conflicting evidence of supervisor comments regarding her FMLA leave, this back-and-forth demonstrates a quintessential fact issue reserved for the province of a jury. Thus, the court will not grant

summary judgment in favor of Defendant on Plaintiff's FMLA retaliation claims and **denies** the Motion as to Plaintiff's FMLA retaliation claim.

### B.     Title VII and Section 1981 Claims for Discrimination and Retaliation

#### 1.     Race and Sex Discrimination

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). When a plaintiff brings circumstantial evidence of employment discrimination based on sex and race, as Plaintiff does here, the court uses the *McDonnell Douglas* burden-shifting framework applied above with respect to Plaintiff's FMLA claims. *Morris v. Town of Independence*, 827 F.3d 396, 400 (5th Cir. 2016).

The elements of a prima facie Title VII and Section 1981 race discrimination claim are identical, as well as the claims' use of the familiar *McDonnell Douglas* framework, and thus the court will analyze those claims together. *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020) (citation omitted); *see also Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1210 (5th Cir. 2021), as revised (Nov. 26, 2021). Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). To establish the prima facie elements of a Section 1981 race discrimination claim, a plaintiff must show that: (1) she is a member of a racial minority; (2) the defendant intended to discriminate against her on the basis of race; and (3) the discrimination concerned an activity enumerated in the statute—here, the "enjoyment of all benefits, privileges, terms, and conditions of a contractual relationship." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (quoting Section 1981(b)).

Once the plaintiff establishes a prima facie case of sex or race discrimination, the employer must provide a legitimate, nondiscriminatory reason for the adverse employment

**Memorandum Opinion and Order – Page 17**

action. *Newbury v. City of Windcrest, Tex.*, 991 F.3d 672, 679 (5th Cir. 2021) (quoting *Haire v. Board of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013)). If the employer provides such a reason, the burden shifts back to the plaintiff to offer evidence or show a genuine dispute of material fact that the offered reason is pretext for discrimination. *Id.*

Because Plaintiff argues two theories of an adverse employment action—reduction-in-force and denial of training—of race and sex discrimination, although without making a clear distinction between either the law or her arguments under those distinct theories, the court will apply the Fifth Circuit's standards for discrimination through (1) a reduction in force and (2) denial of training.

### a.    Reduction-in-Force Analysis

To establish a prima facie discrimination claim based on sex and race in a reduction-in-force case, a plaintiff must show, or raise a genuine dispute of material fact, that: (1) she is a member of a protected class; (2) she was adversely affected by the employer's decision; (3) she was qualified to assume another position when she was terminated; and (4) "there is sufficient evidence, either circumstantial or direct, from which a fact finder may reasonably conclude that the employer intended to discriminate in reaching the adverse employment action, or others who were not members of the protected class remained in similar positions." *Ortiz v. Shaw Grp., Inc.*, 250 F. App'x 603, 606 (5th Cir. 2007).

Here, Plaintiff proffers her deposition testimony and exhibits showing that she is a woman of Indian heritage, satisfying the first element for both a race and sex discrimination claim. The second element is likewise satisfied by the undisputed evidence that Defendant

terminated her in its RIF in June 2020. As for showing that she was qualified to assume another position, Plaintiff has presented evidence that she had multiple sales positions with Qwest, and in her original position as a Sales Engineer team manager, she shows that she received positive performance reviews. She does not, however, present any evidence of available positions at Qwest for which she was qualified.

To satisfy the fourth element, Plaintiff must point to a fellow employee who was similarly situated but is not a member of her protected classes—race and sex—and was not terminated. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009). A similarly situated employee experiences "nearly identical circumstances" as the plaintiff but does not experience the adverse employment action. *Id.* at 260. To determine whether the comparator experienced nearly identical circumstances, the court must consider whether the "employees being compared held the same job or responsibility, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable" standing with their employer. *Id.* Importantly, the reasons for selecting a plaintiff for termination must have been nearly identical to that of the proffered comparator who allegedly was not terminated. *Id.*

In its Motion, Defendant seeks summary judgment on Plaintiff's claims for discrimination under Title VII and Section 1981, arguing that Plaintiff cannot make out a prima facie case of discrimination under either protected class status for a sex or race discrimination claim. Defendant contends that because the other terminated employee was a white male, Plaintiff cannot show a similarly situated employe as required under the fourth element. Defendant confuses this standard, which, as the court has set forth, requires showing evidence of

**Memorandum Opinion and Order – Page 19**

a similarly situated employee who was not subject to termination  and is not a member of the protected classes.

Here, despite this necessary clarification, Defendant correctly argues that Plaintiff failed to offer competent evidence of similarly situated employees with the same position, qualifications, and pay rate who are not members of a protected class and whom Defendant did not select for termination. She testified in her deposition that her non-terminated colleagues were men based on their names, and she believes her colleagues were white based on her speculation of their race based on their voices and accents. Def.'s Summ. J. App. 26-2, 29-30. She fails to offer competent evidence or raise a genuine dispute of material fact regarding their qualifications or even their race outside of unsubstantiated speculation and generalizations, which are not competent summary judgment evidence. *See Forsyth*, 19 F.3d at 1533.

In summary, Ms. Gupta failed to raise genuine dispute of material fact and presented no evidence in support of the third and fourth elements of a prima facie case of reduction-in-force because of discrimination based on race or sex. Thus, the court finds that Defendant is entitled to judgment as a matter of law on her claims for Title VII and Section 1981 discrimination in a reduction-in-force case, and **grants** Defendant's Motion as to these claims.

        *b.*  *Failure to Train Analysis*

          i.  Prima Facie Case

Considering Ms. Gupta's second theory of Title VII and Section 1981 discrimination, to establish the prima facie elements, she must show or raise a genuine dispute of material fact that: "(1) that she is a member of a protected class; (2) that she was qualified for the position sought; (3) she was subject to an adverse employment action; and (4) she was replaced by someone

outside her protected class or was treated less favorably than other similarly situated employees outside her class." *Newbury*, 991 F.3d at 679 (quoting *Haire*, 719 F.3d at 363).

As the court determined above, Plaintiff satisfies the first element as to both her race and sex discrimination claims because it is undisputed that she is a woman of Indian heritage, and therefore a member of those protected classes. As to the second element, Plaintiff raises a genuine dispute of material fact as to her qualifications for her position because she presents evidence in her 2019 performance evaluation that she was qualified for her position and functioning comparably to her peers. Although Mr. Renard testified that Plaintiff was underperforming as compared to her colleagues, Defendant, who did not submit a reply brief, fails to offer sufficient evidence showing that Plaintiff's alleged underperformance or that she was selected for termination on that basis. For this reason, the court determines that Plaintiff has raised a genuine dispute of material fact as to the second element, and, therefore, taking facts in the light most favorable to her as the nonmovant, the court **finds** that she has satisfied this element at the summary judgment stage.

As to an adverse employment action, the Fifth Circuit recently determined, as a matter of first impression, "that an inadequate training theory can satisfy the adverse action prong of *McDonnell Douglas* if the training is directly tied to the worker's job duties, compensation, or benefits." *Rahman v. Exxon Mobil Corp.*, 56 F.4th 1041, 1046 (5th Cir. 2023). Here, Plaintiff presents evidence that Mr. Renard refused to answer her questions, discouraged her from seeking help from her colleagues, and then relied upon her lack of skills in her 2019 performance review. Plaintiff points to his deposition testimony that he selected her for termination, first in the severance-or-PIP offer, and then in the RIF a month later, based on her alleged poor performance and lack of skills. Taking these facts in the light most favorable to Plaintiff, and in the wake of

**Memorandum Opinion and Order – Page 21**

recent Fifth Circuit precedent, the court **finds** that Plaintiff has sufficiently presented competent summary judgment evidence that she suffered an adverse employment action when she was denied training opportunity, was selected for the severance-or-PIP, and then selected to be part of the RIF. This showing satisfies the third element of a prima face claim.

As the court detailed above, Plaintiff must present evidence or raise a genuine dispute of material fact regarding a similarly situated peer who is not a member of a protected class and did not suffer the same adverse employment action. Here, Ms. Gupta testified in her deposition that Mr. Renard denied her training and supervision for activities, such as client calls, unlike her white, male peers during the same period. Pl.'s Resp. to Def.'s Mot. Summ. J. 16. In her 2019 performance review, she commented that Mr. Renard never joined any of her customer calls or provided coaching. In his response to her comments, Mr. Renard appears to agree. Taking these facts in the light most favorable to her, the court **finds** that Plaintiff has offered competent summary judgment evidence that she was provided fewer training opportunities than her similarly situated male peers but not that her male peers were white. As the court determined above, Plaintiff fails to offer competent summary judgment evidence that her colleagues were white, and instead speculates on their races based on their geographic locations and accents. As such, she fails to create a genuine dispute of material fact as to her claim for race discrimination. Thus, the court determines that she fails to satisfy the fourth element as to that claim asserted under Title VII and Section 1981. Accordingly, the court **finds** that Defendant is entitled to judgment as a matter of law on her claims for race discrimination for the denial of inadequate training under Title VII and Section 1981, and **grants** Defendant's Motion as to these claims. The court now turns to Plaintiff's claim for sex discrimination under Title VII.

ii.       Legitimate, Nondiscriminatory Reason

Now that Plaintiff has successfully shown a prima facie case of sex discrimination, Defendant must then provide a legitimate, nondiscriminatory reason for the employee's termination. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425-26 (5th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802-04). As the court found above, Defendant satisfies its burden by offering evidence that Plaintiff was selected for termination based on her alleged poor performance evaluations and uninterest in improvement.

iii.       Pretext

Once the defendant shows a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to then show, by a preponderance of the evidence, that the stated reason was mere pretext for discrimination, or, in the alternative, that the offered reason, while true, is only one of the reasons for the defendant's conduct, and another motivating factor is the plaintiff's protected class status. *Byers*, 209 F.3d at 425-26. If the plaintiff offers evidence that the illegal discrimination was a motivating factor, then the defendant may respond with evidence that it would have terminated the plaintiff regardless of its discriminatory animus. *Ortiz*, 250 F. App'x 603, 606.

The plaintiff must produce "substantial evidence" of pretext, determined by the weight and quality of the evidence offered. *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)). When deciding a motion for summary judgment, a court is to consider the probative value of the proof that the employer's explanation is false and any evidence that supports it's case. *Jones*, 8 F.4th at 369 (internal quotations omitted).

**Memorandum Opinion and Order – Page 23**

In her Response, Plaintiff asserts that she satisfied her burden to show Defendant's offered reason is pretextual through direct evidence that Mr. Renard selected Plaintiff for termination prior to the RIF, chose to terminate her in the RIF without conducting any analysis as to whom to select, and did so after she complained to HR about his unfair treatment of her. In essence, Plaintiff offers a temporal proximity theory to prove the offered reason—reliance on her poor performance evaluations and alleged uninterest in her position—was false.

First, Plaintiff does not offer direct evidence of discrimination because her offered evidence requires an inference or presumption to show discrimination. *See, e.g., Fabela v. Socorro Ind. Sch. District*, 329 F.3d 409, 415 (5th Cir. 2003). This error is of no moment because she fails to show through indirect evidence that Defendant's offered reason is pretext for illegal discrimination against her on the basis of her sex. Plaintiff offers her deposition testimony to prove that Mr. Renard gave her a poor 2019 performance review, reprimanded her more harshly than her male peers for a crying child on a work call, and requiring her to work in person more often. She testified that his treatment of her was harsher than her male peers who had similar call interruptions, although she did not provide any specific details or examples of the alleged disparate treatment. None of the evidence addresses the reasons she provides in her testimony and exhibits as to why Mr. Renard denied her adequate training, which that evidence suggests was because of her FMLA leave absence, not her protected class status as a woman.

Plaintiff offers no evidence that Mr. Renard discriminated against her on the basis of her sex; she only offers subjective belief and speculation. Without any evidence demonstrating discriminatory intent because of sex, the court cannot rely on Ms. Gupta's subjective belief that Defendant discriminated against her because she was a woman. *Byers*, 209 F.3d at 427. Taking

these facts in the light most favorable to Plaintiff, she fails to show or raise a genuine dispute of material fact that Mr. Renard's reprimand was based on discriminatory animus, and that was the reason for his decision to terminate her. Further, Plaintiff's offered evidence that Mr. Renard selected her for termination because of her complaint does not show discrimination but rather goes to her claim for retaliation under Title VII, which the court subsequently discusses.

Taking all facts in the light most favorable to Plaintiff, the court finds that she has not presented competent summary judgment evidence or raised a genuine dispute of material fact as to her Title VII claim for failure to provide adequate training. Accordingly, the court **finds** that Defendant is entitled to judgment as a matter of law and **grants** the Motion as to Plaintiff's claims for sex discrimination under Title VII.

2.   <u>Title VII Retaliation</u>

It is "an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice" under Title VII, or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001). Whether the employee opposes an unlawful practice or participates in a proceeding against the employer's activity, the employee must hold a reasonable belief that the conduct she opposed violated Title VII. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996). A retaliation claim is analyzed through the familiar *McDonnell Douglas* burden-shifting framework. *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 217-18 (5th Cir. 2023).

a.       *Prima Facie Case*

To establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) she experienced an adverse employment action following the protected activity; and (3) a causal link existed between the protected activity and the adverse employment action. *Newbury*, 991 F.3d at 678.

A protected activity is defined as opposition to any practice made unlawful by Title VII, including making a complaint to HR of the specific employment action that the plaintiff reasonably believes is unlawful. *Ackel v. National Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003); *see, e.g., Turner v. Jacobs Eng'g Grp., Inc.*, 470 F. App'x 250, 252 (5th Cir. 2012) (finding that the plaintiff's various complaints to HR of race and sex discrimination satisfied the protected activity element of a prima facie case of Title VII retaliation). Here, Ms. Gupta made two formal complaints to HR about Mr. Renard's alleged discrimination against her for her race and sex, first in late November or early December of 2019, and again on March 9, 2020. Thus, she satisfies the first element.

In this Circuit, an adverse employment action is defined as is "one that 'a reasonable employee' would find 'materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Hudson v. Lincare, Inc.*, No. 22-50149, 2023 WL 240929, *5 (5th Cir. 2023) (published opinion) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "Although that is a fact-specific inquiry, an employment decision tends to be materially adverse when it changes job title, grade, hours, salary, or benefits or effects a diminution in prestige or change in standing among

co-workers." *Hudson*, 2023 WL 240929, at *5 (quoting *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009)) (cleaned up).

Plaintiff testified that her relationship with Mr. Renard worsened after her first complaint in late November or early December. Plaintiff argues that his reprimand of her regarding her crying child in the background of a work call was harsh and that he was "standoffish" towards her and her work. She points to her testimony and Mr. Renard's deposition testimony that their relationship worsened after she made her first HR complaint in 2019. She testified that from that point, if she asked questions or for help, his response was to say "What? You don't know, this kind of thing?" which he did not do with the other white male team members whom she saw ask questions. Def.'s Summ. J. App. 26-2, 29.

A chilly relationship with a supervisor would not dissuade a reasonable worker from making a discrimination complaint, and indeed it did not dissuade Plaintiff from complaining again four months later in March 2020. It was after that second complaint that Mr. Renard decided to terminate Plaintiff, and he made that decision twice: first when offering either a PIP or enhanced severance package on May 7, 2020, and again when selecting her for termination in June 2020. While a chilly relationship without more is not an adverse employment action, termination, on the other hand, certainly is. Thus, Plaintiff has presented evidence showing an adverse employment action, satisfying the second element.

As to the third element, a plaintiff must show the court or raise a genuine issue of material fact that there was a causal connection between her protected activity and termination. At the prima face stage of the *McDonnell Douglas* framework, Ms. Gupta does not need to "prove that her protected activity was the sole factor motivating the employer's challenged decision[.]" *See, e.g., Wallace v. Seton Fam. of Hosps.*, 777 F. App'x 83, 91 (5th Cir. 2019)

**Memorandum Opinion and Order – Page 27**

(unpublished) (quoting *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)). "[T]hat some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case." *Robertson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004) (internal quotation omitted). Consideration of the time lapse is a factor but is not determinative of retaliation. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992). Close timing between the protected activity and termination may provide a causal link. *Swanson v. General Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). For temporal proximity to alone establish prima facie causation, it is required to be "very close." *Breeden*, 532 U.S. at 273 (listing cases). Although there is some disagreement about how close that timing must be to show a temporal proximity, both the Fifth Circuit and the United States Supreme Court have rejected cases that hold that as close as three months are within the "very close" proximity required to establish causation. *Besser v. Texas Gen. Land Off.*, 834 F. App'x 876, 884 (5th Cir. 2020) (citing *Breeden*, 532 U.S. at 273-74). An adverse employment action that occurs six-to-seven weeks after the protected activity, however, does show temporal proximity. *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020), as revised (Aug. 14, 2020) (holding that a complaint made "six weeks and three days before her termination" sufficiently showed a causal connection on timing alone).

Here, Ms. Gupta presents deposition testimony that she first complained to HR that Mr. Renard was discriminating against her by treating her poorly in late November or early December. She complained again on March 9, 2020, alleging "race and gender discrimination." HR processed that complaint by interviewing Mr. Renard on April 20, 2020, and then after HR closed the complaint, Mr. Renard offered Plaintiff a severance package to leave Qwest or be

placed on a PIP. Roughly three weeks transpired between Mr. Renard's interview with HR and his decision to offer Plaintiff either termination with severance or a PIP. Within a few weeks of that offer, Mr. Renard selected Plaintiff for the RIF, and testified that he spoke about her HR complaint with his supervisors prior to that selection. Plaintiff has presented competent summary judgment evidence showing that she was selected for termination twice, the first being within three weeks of Mr. Renard's interview with HR. Because Plaintiff does not proffer other evidence connecting her termination with her protected activity, she requests that the court to find the causal connection on temporal proximity alone, and the court agrees that a three-week lapse is a "very close" proximity. *See Brown*, 969 F.3d at 578.

Moreover, the court notes that the conduct by Defendant is "continuing" because Plaintiff was selected for termination twice. The continuing violation doctrine allows a plaintiff to present a prima facie case of retaliation by demonstrating: (1) that the separate adverse acts "are related, or else there is no single violation that encompasses the earlier acts;" (2) the violation must continue without intervention by the employer such that would preclude liability for preceding acts; and (3) the application of the doctrine must be "tempered by the court's equitable powers, which must be exercised to honor Title VII's remedial purpose without negating the particular purpose of the filing requirement." *Goree v. City of Verona*, No. 21-60911, 2022 WL 3647279, at *2 (5th Cir. Aug. 24, 2022) (unpublished) (citing *Stewart v. Mississippi Transp. Com'n*, 586 F.3d 321, 329 (5th Cir. 2009)); *see also Heath v. Board of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 741 (5th Cir. 2017), as revised (Mar. 13, 2017) (applying the continuing violation doctrine to a Title VII retaliation claim).

In sum, these undisputed facts show that Plaintiff made a complaint of sex and race discrimination to HR in late 2019 and again in March 2020, Defendant later terminated her in

June 2020, and that the first termination decision was within three weeks of Mr. Renard's interview with HR and HR's termination of the complaint. Thus, the court **finds** that Plaintiff has stated a prima face case, and now the burden shifts to Defendant.

### b.    Legitimate, Nonretaliatory Reason

The establishment of a prima facie case gives rise to an inference of retaliation. *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001). This inference, in turn, shifts the burden of production to the defendant, who must then articulate a legitimate, nondiscriminatory or nonretaliatory reason for the challenged employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). Here, Defendant asserts that Plaintiff's termination was based on her "poor performance, refusal to learn the Senior Lead Sales Engineer position, and stated disdain for the position she held at Qwest." Def. Summ. J. Br. 30. Defendant again points to the evidence of Plaintiff's poor performance reviews from 2019, Mr. Renard's deposition statement that he relied upon her job performance in 2020, and Ms. Dial's deposition testimony that Plaintiff was uninterested in her position at Qwest.

### c.    Pretext

If the employer provides a legitimate, nonretaliatory reason, the burden shifts back to the plaintiff to offer some evidence from which a jury could reasonably infer that the employer would not have taken the action *but for* the protected activity. *McCoy*, 492 F.3d at 562; *Wallace*, 57 F.4th 209, 217-18. A plaintiff asserting a Title VII or Section 1981 retaliation claim must meet the higher but-for standard of causation than when alleging discrimination under the same statute. *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 436 (5th Cir. 2022), *cert. denied sub nom. Wantou v. Wal-Mart Stores Tex.*, No. 22-263, 2023 WL 350003 (U.S. Jan. 23, 2023)

(citing *University of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)). Under the but-for cause standard, "a plaintiff must demonstrate that, but for the defendants unlawful conduct, [her] alleged injury would not have occurred." *Comcast Corp. v. National Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020); *see also Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 325 (5th Cir. 2020). Although a plaintiff may initially plead and ultimately prove that, but for her sex or race, she would not have suffered the loss of a legally protected right, at the summary judgment stage, such plaintiff only needs to present sufficient evidence to raise a genuine dispute of material fact regarding pretext to defeat summary judgment.

Although a plaintiff may state a prima facie case by showing a close temporal proximity, such evidence alone is insufficient to demonstrate or raise a genuine issue of fact for pretext. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 307 (5th Cir. 2020) (finding that although the adverse action occurred only one week after the protected activity, plaintiff failed to substantiate pretext because she did not offer any additional proof). Offering evidence that shows a "combination of suspicious timing with other significant evidence of pretext [] can be sufficient to survive summary judgment." *Myers v. Crestone Int'l, LLC*, 121 F. App'x 25, 28 (5th Cir. 2005) (unpublished) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir.1999)).

Here, Plaintiff points to the temporal proximity of Mr. Renard's interview with HR on April 20, 2020, and his decision to terminate her in early May and again in June as part of the RIF. Mr. Renard admits that the complaint affected their relationship and that he discussed her complaint with other Qwest leadership. Finally, Plaintiff points to Mr. Renard's testimony that he did not conduct any analysis as to whom to terminate as part of the RIF.

That evidence, however, shows the possibility of retaliation for her complaints in making the termination decision but does not rise to the but-for standard required. Plaintiff's supervisors reviewed her job performance poorly and stated she struggled to learn her position. Although Plaintiff can point to evidence suggesting that her complaints of race and sex discrimination were on her supervisors' minds at the time of her termination, such evidence fails to show that but-for retaliation, she would not have been terminated. Plaintiff has not offered evidence that shows reliance on her past performance reviews—which do not mention her sex or race as did Defendant's mention of her FMLA leave—is pretext for retaliation for her HR complaints.

Without more evidence, however, a reasonable finder of fact could not conclude that Defendant's proffered reasons for her dismissal were pretextual for race and sex discrimination. She has not produced enough evidence to create a jury issue as to the employer's retaliatory animus or the falsity of the employer's legitimate explanation. *Myers*, 121 F. App'x at 28 (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)). Temporal proximity alone is insufficient to prove but-for causation. *Strong v. University Healthcare Sys., LLC.*, 482 F.3d 802, 808 (5th Cir. 2007). For this reason, the court **finds** that Plaintiff has failed to raise a genuine dispute of material fact as to pretext, and Defendant is therefore entitled to judgment as a matter of law. Accordingly, the court **grants** Defendant's Motion as to Plaintiff's claim for retaliation under Title VII.

### C.    Retaliation under TCHRA

Next, the court considers the Motion's request for summary judgment on Plaintiff's claim for retaliation under the TCHRA, Texas Labor Code § 21.055. Defendant argues that, identical to

**Memorandum Opinion and Order – Page 32**

her claims for retaliation under Title VII, Section 1981, and FMLA, Plaintiff cannot show that her termination was pretext for discrimination under the TCHRA standard.

Like the federal statutes invoked above, the TCHRA protects employees from retaliation "who, under [the TCHRA]: (1) oppose a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." Tex. Lab. Code Ann. § 21.055 (West 2021); *see Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 585 (Tex. 2017). Under Section 21.055, a claim for retaliation requires a plaintiff to show or raise a genuine dispute of material fact that "(1) she engaged in an activity protected by the TCHRA, (2) an adverse employment action occurred, and (3) there exists a causal link between the protected activity and the adverse action." *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 137 (Tex. 2015). A plaintiff must present evidence showing that her protected class status was the but-for cause for the defendant's decision. *Pineda v. United States Parcel Serv.*, 360 F.3d 483, 488 (5th Cir. 2004). The Fifth Circuit clarified that the Texas Supreme Court's decision in *Quantum Chemical Corp. v. Toennies*, 47 S.W.3d 473, 479-80 (Tex. 2001), relied on the text of Sections 21.125(a) and 21.055 to require the same pretext standards of proof for claims brought under the TCHRA as the standards of proof for claims brought pursuant to Title VII. *Id.* Thus, Section 21.125(a) claims for discrimination require the less-exacting motivating factor standard, while Section 21.055 claims for retaliation require the but-for standard to show pretext.[3] *Id.*

Here, Defendant repeats its arguments that Plaintiff cannot establish a prima facie case for retaliation under the TCHRA because she cannot show sufficient evidence of a temporal

---

[3] Section 21.125(a) includes the following claims for discrimination, but it does mention not retaliation: race, color, sex, national origin, religion, age, and disability.

**Memorandum Opinion and Order – Page 33**

connection. In the alternative, if the court finds that Plaintiff has established a prima facie case of retaliation, Defendant contends that Plaintiff cannot show pretext through evidence that allows an inference that retaliation was the real motive.

First, like her claims for retaliation under the federal statutes, Plaintiff has sufficiently presented evidence to show a prima facie case of retaliation under the TCHRA because she: (1) complained of sex and race discrimination to HR; (2) suffered an adverse employment action when Qwest terminated her; and (3) presented a temporal proximity of roughly three weeks between Mr. Renard's meeting with HR regarding her complaints and his decision to terminate her. Likewise, Defendant's legitimate, nondiscriminatory reason is the same: Plaintiff had unsatisfactory job performance, documented in her two reviews in 2019 and in her supervisor's observations in 2020.

Before turning to consider evidence of pretext, the court must first address Plaintiff's Response arguments. Pl.'s Resp. to Def.'s Mot. Summ. J. 32. Each of Plaintiff's cited cases addresses claims for *discrimination* under Section 21.125(a), not claims for *retaliation* under Section 21.055, which is the claim that Plaintiff alleges in her Second Amended Complaint. *See* Pl.'s Second Am. Compl. 9 ("Retaliation Under the Texas Commission on Human Rights Act: Defendant retaliated against Plaintiff for making discrimination complaints, for participating in a discrimination investigation, or otherwise opposing sex discrimination, race, and national origin discrimination by the employer. *See* Texas Labor Code § 21.055."). Section 21.125(a) does not mention a cause of action for retaliation as a possible claim asserted under that provision of the statute. Tex. Lab. Code Ann. § 21.125(a). Accordingly, the court evaluates Plaintiff's TCHRA

claim as one for retaliation under Section 21.055, and applies its but-for standard to determine pretext. *See Pineda*, 360 F.3d at 488.

As such, the court's analysis follows its earlier Title VII sex and race retaliation claims analysis using the same but-for standard. Plaintiff has not produced sufficient evidence, or raised a genuine dispute of material fact, regarding but-for causation to show pretext. Plaintiff's complaints were brought to Mr. Renard in April 2020, who confirmed that he discussed the complaint with another Qwest manager, all of which transpired prior to his decision to terminate Plaintiff. Mr. Renard made that decision based on Plaintiff's poor job performance reviews, and, without offering evidence that Defendant's reliance on past job performance reviews is pretextual, Plaintiff has failed to present component summary judgment evidence that shows or creates a genuine dispute of material fact as to her retaliation claim under the TCHRA. For these reasons, Defendant is entitled to judgment as a matter of law, and the court **grants** the Motion as to Plaintiff's claim for retaliation under the TCHRA.

### D.    Front Pay Damages

Finally, Qwest argues that Plaintiff is not entitled to front pay as a matter of law because she did not seek reinstatement. Front pay damages award the plaintiff with future lost earnings, when than reinstatement—the preferred remedy for discriminatory employment practices—are not feasible. *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822 (5th Cir. 1990). The district court, in its sound discretion, may determine whether reinstatement is feasible or appropriate method to compensate a victim of discrimination for lost future wages and benefits. *Floca v. Homcare Health Servs., Inc.*, 845 F.2d 108, 112 (5th Cir. 1988); *Reneau v. Wayne Giffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991); *see also Shirley*, 970 F.2d at 44. This requires, first, a finding that

**Memorandum Opinion and Order – Page 35**

the plaintiff actually suffered discrimination. *See, e.g., Floca*, 845 F.2d at 112; *Walther v. Lone Star Gas Co.*, 952 F.2d 119 (5th Cir. 1992).

Here, a decision to preclude Plaintiff from receiving front pay damages is premature because Plaintiff's claims for FMLA retaliation are still before the court. Because ultimate liability is still in question, the court need not consider whether to award front pay damages or other forms of equitable remedies until after entry of a final judgment. As for Defendant's argument that front pay damages are not allowed because Plaintiff does not seek reinstatement in her old position at Qwest, Defendant fails to provide citation to controlling Fifth Circuit or Supreme Court precedent, and the court found none. For these reasons, the court **denies** Defendant's Motion on Plaintiff's request for front-pay damages.

## IV.    Conclusion

For the reasons explained, the court **grants in part** and **denies in part** Defendant's Motion for Summary Judgment (Doc. 26). Specifically, the court **grants** Defendant's Motion with respect to Ms. Gupta's claim of interference under the FMLA; her claims of sex and race discrimination under Title VII and Section 1981; and her claims of retaliation under Title VII and the TCHRA. As she has failed to raise a genuine dispute of material fact as to these claims, they are hereby **dismissed with prejudice**. As genuine disputes of material fact remain for trial with respect to Ms. Gupta's FMLA retaliation claim, the court **denies** Defendant's Motion as to this claim.

**Given the court's ruling, it strongly encourages the parties to consider an expeditious resolution of the pending FMLA retaliation claim without the necessity of court intervention. The court notes that this is not an "open-and-shut" case for either side. As the**

Memorandum Opinion and Order – Page 36

court has made its definitive rulings, the parties are in a superior position to revisit their relative strengths and weaknesses regarding the remaining claim. The court directs the parties to inform it in writing no later than February 28, 2023, whether they can resolve this action without further court involvement. If the parties cannot resolve this action without a trial, the court directs them to inform it in writing of three separate months, starting in June of this year, of their availability for the trial of this action, and inform the court of the estimated length of time to try this action if necessary. The parties are not to offer back-to-back months for a possible trial of this action. The court will enter an amended scheduling order resetting the trial of this action and other pretrial deadlines if a trial is necessary.

It is so ordered this 14th day of February, 2023.

Sam A. Lindsay
United States District Judge